1

2

3                 IN THE UNITED STATES DISTRICT COURT

4             FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6   DONALD F. CHIARIELLO,                No. C 04-1076 CW

7            Plaintiff,                  ORDER ADDRESSING
                                         PARTIES' CROSS-
8        v.                              MOTIONS FOR SUMMARY
                                         JUDGMENT
9   ING GROEP NV, a
    Netherlands
10  corporation,

11           Defendant.

12   _____/

13

14      Plaintiff Donald F. Chiariello moves for summary adjudication of

15  certain issues in this case.  Defendant ING GROEP NV opposes the

16  motion, and cross-moves for summary judgment in its favor based on

17  its affirmative defenses.  Plaintiff opposes the cross-motion.

18      The matter was heard on November 4, 2005.  Having considered

19  all of the papers filed by the parties and oral argument on the

20  motion, the Court GRANTS in part Plaintiff's motion for summary

21  adjudication and DENIES it in part, and DENIES Defendant's cross-

22  motion.

23                            BACKGROUND

24      The following facts are undisputed, unless otherwise noted.

25      Plaintiff, a retired attorney, is the former owner of a wooden

26  sailing vessel named the ATTU, which he purchased in January, 2001.

27  Plaintiff is an experienced sailor, and he lived on the boat.

28      Plaintiff sought an insurance policy for the ATTU through Blue

Water Insurance Company (hereinafter, Blue Water), located in Jupiter, Florida.  Blue Water's business is "assisting members of the public such as [Plaintiff] in obtaining marine insurance for their vessels."  Spink Decl. ¶ 2.  As a broker, Blue Water was not authorized to bind an insurer, but only "to submit information" to underwriters in an attempt to obtain quotes or coverage.  Id. ¶ 5. Blue Water did business with T.L. Dallas (Special Risk) Ltd. (hereinafter, T.L. Dallas), a United Kingdom-based company.  T.L. Dallas acts as a managing agent for marine insurance companies. Unlike Blue Water, T.L. Dallas is authorized to underwrite insurance and handle claims for insurance companies, including Defendant.

Plaintiff filed his first application for coverage with Blue Water on December 20, 2000.  The pre-printed application form was prepared by Blue Water.  Blue Water responded to Plaintiff's initial application with a proposal for insurance by Lloyd's of London; the proposal was made "subject to satisfactory crew resumes and itinerary."  Kelly Decl., Ex. 5, December 26, 2000 Insurance Proposal to Plaintiff from Blue Water.  On February 10, 2001, a Blue Water representative informed Plaintiff that "the Underwriters are still awaiting satisfactory crew resumes . . . ."  Kelly Decl., Ex. 6, February 10, 2001 Letter from Kristin L. Woodruff to Plaintiff. Plaintiff never responded to this request for crew information, and neither Blue Water nor the underwriter followed up on the request.

Plaintiff submitted a renewal application to Blue Water on January 9, 2002, in which he stated that no changes from the previous year's "coverages, values & navigation area" were needed. Blue Water responded by sending Plaintiff a renewed policy with

2

Lloyd's, "subject to satisfactory crew resumes prior to departure from New Zealand coastal waters."  Kelly Decl., Ex. 8, March 6, 2002 Letter from Donald W. Spink to Plaintiff.  Again, Plaintiff did not provide the requested crew information, and neither Blue Water nor the underwriter followed up on the request.

Plaintiff submitted a second renewal application to Blue Water on October 11, 2002, stating that he required a change in navigational area.  This renewal application, also pre-printed and prepared by Blue Water, had been revised to contain the following new section, captioned in bold print, "Please Read Before Signing This Application," and reading in part,

> This application shall be incorporated in its entirety into any policy of insurance issued to you.  Any misrepresentation in this application shall automatically render your insurance coverage null and void from inception.  Please therefore check to make sure that all questions have been fully answered and that all relevant facts have been disclosed.  This application constitutes the complete and exclusive statement by you concerning the subject matter hereof.  If you need to supplement your application, you must do so in writing on a supplemental application. . . .  Single-handed navigation is not allowed unless your policy has been specifically endorsed for such activity. . . .  This application shall be governed by and interpreted in accordance with Florida law, without regard to principles of conflicts of law.

Kelly Decl., Ex. 9, Oct. 8 Application.  The parties dispute the meaning and effect of the single-handed navigation clause.  Mr. Spink testified that the single-handed navigation language was an "informational thing that the insured acknowledges when he signs this application that he understands single-handed navigation is not allowed unless the policy has been endorsed."  Mannion Decl., Ex. 13, Spink Dep. 82:19-23.  He added it to the application on the advice of his attorney, as a result of a dispute with an insured who

3

navigated a boat single-handed despite the fact that his policy contained a three-crew warranty.  Mannion Decl., Ex. 18, Spink Dep. 33-34.  B. A. Usher, Managing Director for T.L. Dallas, testified that single-handed navigation meant single-handed sailing, but that the relevant clause did not prohibit single-handed navigation or sailing for short trips because T.L. Dallas "would try to behave on a reasonable basis.  For an extended voyage, certainly" the prohibition applies.[1]  Mannion Reply Decl., Ex. 16, Usher Dep., 83:18-84:24.

In the process of renewing Plaintiff's application, Blue Water was reminded that information about the crew was required.  Lloyd's sent Blue Water information about renewing Plaintiff's policy but noted, "Subject to detailed crew resumes (these still appear to be outstanding from last year !!)."  Kelly Decl., Ex. 10, November 22, 2002 Fax from David Mason of Waterborne Under Writing Agency (associated with Lloyd's) to Mark Spink.  More than one month later, Blue Water was given a quote from a new insurance agency, Defendant ING GROEP NV, but T.L. Dallas stated as a special condition, "Crew details required."  Id., Ex. 11, December 30, 2002 Fax from Matthew McLean of T.L. Dallas to Don Spink.[2]  T.L. Dallas agreed to issue a

---

[1]Plaintiff objects to much of Mr. Usher's testimony as inaccurate and speculative.  Plaintiff's objections generally go to the weight rather than the admissibility of Mr. Usher's evidence, and are overruled.

[2]Plaintiff objects to the admission of these and other faxes on the grounds that Mr. Kelley, counsel for Defendant, is unable to attest personally to the authenticity of the faxes.  Plaintiff does not, however, contest the authenticity of the documents themselves. The Court considers the documents attached to the Kelley Declaration for the purpose of this motion only.

4

temporary policy for Plaintiff, subject to the provision of new crew details, and the day after repeated that a copy of Plaintiff's "full crew details" was required.  Kelly Decl., Ex. 12, January 2, 2003 Fax from Jo Naylor of T.L. Dallas to Don Spink; id., Ex. 13, January 3, 2003 Fax from Rob Elvin of T.L. Dallas to Don Spink.

On January 3, 2003, Blue Water emailed Plaintiff, informing him that the underwriters were requesting his crew details and asking for the crew's sailing resume.  Kelly Decl., Ex. 14, January 3, 2003 Email from Blue Water to Plaintiff.  The next day, Plaintiff responded by email to Blue Water identifying his only crew member as Sandra Huberfeld and describing her background information and sailing experience.  Id., Ex. 15, January 4, 2003 Email from Plaintiff to Blue Water.  At that time, both Plaintiff and Ms. Huberfeld expected that she would be on board during the entire policy period.

T.L. Dallas apparently did not receive this information immediately, and on February 3, 2003 sent another fax to Blue Water asking for full crew details and warning that the policy would be cancelled from its inception if the missing documentation was not provided within one week.  Blue Water promptly responded with the information Plaintiff had provided about Ms. Huberfeld, which T.L. Dallas accepted.

According to Mr. Usher, had either Plaintiff or Ms. Huberfeld had less than 5,000 miles of blue water experience, he would have insisted that another individual be included on board as crew. Usher Decl. ¶ 25.  Mr. Spink also understood that T.L. Dallas' requests for information about the crew, after the issuance of a

temporary coverage note, were "in order to assist in determining whether [the underwriter] was going to agree to issue a policy of marine insurance on [Plaintiff's] vessel." Spink Decl. ¶ 8.  Both Mr. Usher and Mr. Spink understood Plaintiff's information to mean that Ms. Huberfeld would be on board the ATTU during the entire policy term.  Spink Decl. ¶ 12; Usher Decl. ¶ 33.

On February 18, 2003, T.L. Dallas issued a Cover Note and policy for Plaintiff.  The policy specified that its terms "incorporat[ed] in full the application form signed by [Plaintiff]." Kelly Decl., Ex. 19, Insurance Agreement § 2.  The section on "General Conditions & Warranties" provided that Plaintiff's brokers "shall be deemed to be exclusively the agents of [Plaintiff] and not of us in any and all matters . . . .  Any notice given or mailed by or on behalf of us to the said brokers . . . shall be deemed to have been delivered to you." Id. § 9(i).  It warned that the policy would be void "in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance." Id. § 9(n).  The insurance policy agreement further provided that any dispute would be adjudicated according to well-established substantive federal admiralty laws, or New York law absent federal admiralty precedent.  Neither the policy agreement's sections on exclusions to coverage, its general conditions and warranties, nor any other portion of the policy addressed single-handed navigation or crew requirements generally.  The policy sent to Plaintiff did not include or attach any of the application forms submitted to Blue Water by Plaintiff.

In May, 2003, Ms. Huberfeld decided to leave the ATTU.

Plaintiff did not inform Blue Water or Defendant that she was no longer a member of the crew.  Mr. Spink states that he would have expected Plaintiff to provide Blue Water with information about Ms. Huberfeld's departure, and that such information would have been passed along to T.L. Dallas immediately.  Spink Decl. ¶ 14.  After Ms. Huberfeld left, Plaintiff sometimes sailed alone and sometimes with companions of with varying levels of experience.

On or around October 11, 2003, Plaintiff began sailing the ATTU from Palau Tioman, Malaysia to Singapore.  Plaintiff expected the trip to take less than one day.  He was alone on the ship, and was equipped with a Global Positioning Satellite (GPS) system, a sextant and numerous maps and charts.  At approximately 4:15 a.m. on October 12, 2003, the ATTU suddenly listed and began to sink.  At the time, Plaintiff was on deck, alert and did not see anything amiss.  The ship sank in less than a minute.  Plaintiff swam to his automatically inflated lifeboat, and was rescued sixty-three hours later by a passing fishing boat.  Following the loss, Plaintiff notified Blue Water, which in turn notified T.L. Dallas.

T.L. Dallas appointed the firm of Wager and Associates to investigate the circumstances of the loss.  Guy Matthews, a trained marine insurance adjuster and Wager employee, determined that Plaintiff's solo operation of the ATTU did not cause or contribute to the vessel's sinking, and that Plaintiff's operation of the ATTU did not breach the implied warranty of seaworthiness.[3]  Mannion

---

[3]Defendant objects and moves to strike portions of Mr. Matthews' testimony and the report by Wager and Associates, on the grounds that Mr. Matthews is not qualified as an expert in these matters.  Defendant's motion to strike is denied; regardless of the

1  Decl. Ex. 2, Defendant's Response to Plaintiff's Requests for
2  Admissions, First Set, Nos. 29-32; id., Ex. 8, Matthews Dep. 6:4-14;
3  id., Ex. 9, October 23, 2003 Wager Preliminary Report.  Mr. Matthews
4  concluded that the ATTU was certainly a total loss, and recommended
5  payment of Plaintiff's claim.

6       Ultimately, however, Mark Thomas, T.L. Dallas' claims manager,
7  decided to deny Plaintiff's claim on the basis that Plaintiff's solo
8  operation of the boat constituted a material non-disclosure in
9  violation of the doctrine of uberrimae fidei.  Kelley Decl., Ex. 20,
10 June 11, 2003 Email from A. M. Thomas to Thierry Serck.  In support
11 of this decision, Mr. Thomas cited a case called La Reunion
12 Francaise, S.A. v. Haugen, No. 98-7129-Civ-Ferguson/Snow (S.D. Fla.
13 Jan. 20, 2000).  T.L. Dallas also served as underwriter for the
14 defendant in La Reunion Francaise, in which the court decided that
15 single-handed sailing was a special condition affecting insurance
16 coverage that should have been disclosed pursuant to uberrimae
17 fidei.

18      Plaintiff moves for summary adjudication of issues related to
19 his claim for breach of contract, including (1) whether Defendant's
20 insurance policy provided coverage for the sinking of Plaintiff's
21 vessel; (2) whether Defendant breached the insurance contract by
22 refusing to pay; (3) the amount owed under the policy; and
23 (4) whether Florida or New York law is applicable.  Defendant cross-
24 moves for summary judgment in its favor on the basis of its

25 _____

26 extent of Mr. Matthews' expertise, it is admissible not to prove
   how the ATTU sank, but to support a showing that Defendant lacks
27 evidence proving Plaintiff caused the accident.

28

affirmative defenses: (1) that it is allowed to void or cancel
Plaintiff's policy based on the doctrine of uberrimae fidei, and
(2) that Plaintiff engaged in single-handed navigation in violation
of the terms of the insurance policy, so Defendant is not required
to cover the loss of the ATTU.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and
disputed issues of material fact remain, and when, viewing the
evidence most favorably to the non-moving party, the movant is
clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56;
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v.
Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no
material factual dispute.  Therefore, the court must regard as true
the opposing party's evidence, if supported by affidavits or other
evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d
at 1289.  The court must draw all reasonable inferences in favor of
the party against whom summary judgment is sought.  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel
Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th
Cir. 1991).

Material facts which would preclude entry of summary judgment
are those which, under applicable substantive law, may affect the
outcome of the case.  The substantive law will identify which facts
are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

Where the moving party does not bear the burden of proof on an

9

issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. See UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. See id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. See UA Local 343, 48 F.3d at 1471. The non-moving party's

10

1  "burden of contradicting [the moving party's] evidence is not

2  negligible."  Id.  This standard does not change merely because

3  resolution of the relevant issue is "highly fact specific."  See id.

4                              DISCUSSION

5  I.  Coverage of Single-Handed Navigation

6      A central issue to both Plaintiff's claim for breach of

7  contract and Defendant's affirmative defenses is whether the clause

8  in the renewal application regarding single-handed navigation bars

9  coverage of this accident, which occurred while Plaintiff was

10  sailing solo.  Plaintiff maintains that the clause is invalid or

11  unenforceable, on various grounds.  Defendant asks the Court to

12  decide, as a matter of law, that the single-handed navigation clause

13  excludes coverage of the accident.

14      The interpretation of an insurance policy is a question of law

15  that may be decided on summary judgment.  Exxon Corp. v. St. Paul

16  Fire and Marin Ins. Co., 129 F.3d 781, 786 (5th Cir. 1997).  When

17  terms in an insurance contract are undefined, they are "read in

18  light of the skill and experience of ordinary people, and given

19  their everyday meaning as understood by the 'man on the street.'"

20  Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1188 (11th

21  Cir. 2002) (quoting Thomas v. Prudential Prop. & Cas., 673 So.2d

22  141, 142 (Fla. Dist. Ct. App. 1996)).  Policy language is ambiguous

23  if it is "susceptible to more than one reasonable interpretation,

24  one providing coverage and one limiting coverage."  Id. at 1186

25  (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla.

26  2000)).

27      Plaintiff argues that the single-handed navigation clause is

28                                  11

unenforceable because it was contained only in the renewal application rather than in the contract itself, and because Mr. Spink had no intent or authority to author a limitation of coverage. Defendant counters that the contract incorporated all the terms of the application, and urges the Court to construe the application against Plaintiff because it was authored by Plaintiff's agent.

The location of an exclusion may render it ambiguous and unenforceable.  See <u>Ajax Bldg. Corp. v. Hartford Fire Ins. Co.</u>, 358 F.3d 795, 799 (11th Cir. 2004) (construing an insurance policy in favor of the insurer and noting that "the exclusion clause in this . . . policy is not hidden among other language so as to create ambiguity and confusion."; <u>see also</u> <u>Saltarelli v. Bob Baker Group Med. Trust</u>, 35 F.3d 382, 386 (9th Cir. 1994) (finding purported exclusion of pre-existing medical conditions unenforceable where exclusion language neither clear nor plain and inconspicuously buried in list of definitions); <u>Hodges v. Nat'l Union Indem. Co.</u>, 249 So. 2d 679, 681 (Fla. 1971) ("the fine print of an insurance policy . . . should not be read to exclude coverage unless it plainly and with certainty 'brings home' in unambiguous language to the insured that he is not protected in a certain particular").

Here, the insurance policy itself includes a lengthy list of exclusions to coverage and general conditions and warranties, yet never addresses the issue on which Defendant now seeks to limit its liability.  The provision purportedly barring Plaintiff from single-handed navigation was not only absent from the policy, but it was contained in an application form, not prepared by Defendant, that was never returned to Plaintiff.  Defendant argues that any

ambiguity in the scope of coverage due to the application form should be interpreted against Plaintiff because the single-handed navigation clause in the application form was authored by Mr. Spink, Plaintiff's agent.  Defendant relies on <u>Halpern v. Lexington Ins. Co.</u>, 715 F.2d 191, 193 (5th Cir. 1983), in which the court held that ambiguity in coverage would be interpreted against an insured where it was the insured's own description of the property that was later disputed.  The Fifth Circuit found in that case that interpretation of ambiguity against the insurer would "produce an unreasonable and absurd result."  Under the facts of this case, however, it is an interpretation in Defendant's favor that would result in an unreasonable result, granting Defendant a windfall on the basis of a gratuitous warning offered to Plaintiff by his broker.  Therefore, the Court finds that the single-handed navigation clause in the application did not plainly or clearly limit the terms of the insurance policy, which did not itself contain any such exclusion.

Furthermore, Defendant's position assumes that Plaintiff's agent could unwittingly add a limitation to coverage, despite Defendant's own decision not to include such a limitation in the policy.  Defendant provides no authority for this proposition.  Indeed, Defendant repeatedly emphasizes that Mr. Spink was Plaintiff's agent, with no authority to bind the insurer, and Mr. Spink himself describes the language application form as "informational" only.  Plaintiff obtained insurance from another company in two prior years using application forms without any reference to the issue of single-handed navigation.  The insurance policy's incorporation of the application was clearly intended to

13

include those affirmative representations made by Plaintiff, e.g. regarding his intended route or the state of the vessel, not the terms of Blue Water's own application form.  In fact, the terms in the application cannot be incorporated wholesale into the contract, as illustrated by the conflict between the application's Florida choice-of-law provision and the contract's New York provision.

For these reasons, the Court finds that the single-handed navigation clause included in the renewal application was not incorporated into the insurance contract between Plaintiff and Defendant.

For the same reasons, the Court finds that the Florida choice-of-law provision in the renewal application is not incorporated into the policy.  Therefore, the Court does not reach the issue of the applicability of Florida statute § 627.409(2), which requires that an insurer seeking to deny coverage show a causal connection between the insured's breach, or violation of a warranty, condition or provision, and a resulting increase in hazard.

As a result, the Court denies Defendant's motion for summary adjudication of its defense that Defendant was not required to cover the loss of the ATTU because Plaintiff's single-handed navigation violated the terms of the insurance policy.  The Court also denies Plaintiff's motion for summary adjudication that Florida law applies to the insurance contract.

II. <u>Uberrimae Fidei</u> and New York Counterparts

Defendant moves for summary judgment in its favor on its defense that Plaintiff misrepresented or failed to disclose material facts, i.e. Ms. Huberfeld's May, 2003 departure from the crew, in

14

1  violation of the doctrine of <u>uberrimae fidei</u>, thus allowing

2  Defendant to void the policy.  Plaintiff opposes the motion.

3  Pursuant to the terms of the insurance policy, the Court applies

4  well-established substantive federal admiralty law, and New York law

5  where no federal admiralty precedent exists.

6      A.  Federal Admiralty Law

7      Under the doctrine of <u>uberrimae fidei</u>, "the parties to a marine

8  insurance policy must accord each other the highest degree of good

9  faith."  <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 13 (2nd Cir.

10  1086) (citing <u>Puritan Ins. Co. v. Eagle S.S. Co., S.A.</u>, 779 F.2d

11  866, 870 (2nd Cir. 1985)).  This "requires that an insured fully and

12  voluntarily disclose to the insurer all facts material to the

13  calculation of the insurance risk." <u>HIH Marine Serv., Inc., v.</u>

14  <u>Fraser</u>, 211 F.3d 1359, 1362 (11th Cir. 2000) (citing <u>Steelmet, Inc.,</u>

15  <u>v. Caribe Towing Corp.</u>, 747 F.2d 689, 695 (11th Cir. 1984)).  "Since

16  the assured is in the best position to know of any circumstances

17  material to the risk, he must reveal those facts to the underwriter,

18  rather than wait for the underwriter to inquire." <u>Knight</u>, 804 F.2d

19  at 13.  If the insured fails to meet the standard of <u>uberrimae</u>

20  <u>fidae</u>, the underwriter is entitled to void the policy <u>ab initio</u>.

21  <u>Id.</u> (citing <u>Puritan Ins. Co.</u>, 779 F.2d at 870-71).

22      The doctrine is well-established federal law.  <u>HIH Marine</u>

23  <u>Serv.</u>, 211 F.3d at 1362.  However, the question of whether the

24  doctrine of <u>uberrimae fidei</u> imposes a continuing obligation on the

25  assured to notify the insurer of any subsequent change in a material

26  fact is not similarly well-established.  Where federal maritime law

27  is not well-settled, the Supreme Court's decision in <u>Wilburn Boat</u>

28                                    15

1 Co. v. Fireman's Fund Ins. Co., 348 U.S. 310 (1955), has generally

2 been interpreted, "in deference to state hegemony over insurance, to

3 discourage the fashioning of new federal law and to favor the

4 application of state law." Albany Ins. Co. v. Wisniewski, 579 F.

5 Supp. 1004, 1013-14 (D. R.I. 1984) (listing cases).

6     Neither party cites directly applicable federal admiralty

7 precedent. Plaintiff denies that he had any ongoing duty to report

8 changes in his situation that occurred after the policy was finally

9 issued. Plaintiff cites Rallod Transp. Co. v. Continental Ins. Co.,

10 727 F.2d 851, 853 (9th Cir. 1984), for the proposition that the

11 insured's duty to disclose terminates when an insurance contract is

12 formed. However, the Ninth Circuit in Rallod was specifically

13 construing California insurance law, and did not consider uberrimae

14 fidei. The cases cited by Defendant generally involve

15 misrepresentations or failures to disclose information prior to the

16 commencement of coverage. See, e.g., HIH Marine Serv., 211 F.3d at

17 1363-64 (voiding marine insurance policy ab initio based on

18 assured's material misrepresentation to insurer regarding identity

19 of insured and use of vessel).

20     The First Circuit has stated in dicta that the uberrimae fidei

21 doctrine imposes a "strict, continuing obligation on the vessel

22 owner to ensure that the vessel will not, through bad faith or

23 neglect, knowingly be permitted to break ground in an unseaworthy

24 condition." Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d

25 50, 55 (1st Cir. 1995) (citing Austin v. Servac Shipping Line, 794

26

27

28

F.2d 941 (5th Cir. 1986)).[4]   However, this statement is not persuasive because it conflates two separate sections in <u>Austin</u>: first, a discussion of <u>uberrimae fidae</u>, which does not refer to a "continuing" obligation, and second, a discussion of the warranty of seaworthiness, which the court <u>did</u> describe as a "continuing obligation."   <u>Austin</u>, 794 F.2d at 943, 944.

For these reasons, the Court finds that well-established federal admiralty law required Plaintiff fully and voluntarily to disclose to the insurer all facts material to the calculation of the insurance risk, but did not impose a continuing obligation to disclose.   <u>See</u> <u>Navegacion Goya, S.A., v. Mut. Boiler & Mach. Ins. Co.</u>, 411 F. Supp. 929, 936 n.8 (S.D. N.Y. 1975) (noting no well-established federal rule with respect to whether affirmative representations are necessarily warranties that the same circumstances will continue).   The Court therefore looks to relevant State law to determine whether Plaintiff had such a continuing obligation.   <u>See</u> Section II(C), below.

B.   Material Misrepresentation or Omission

Thus, the only question regarding federal <u>uberrimae fidae</u> is whether Plaintiff fully and voluntarily disclosed to Defendant all facts material to the calculation of the insurance risk, at the time he applied for insurance.   The standard for whether a risk should be

---

[4]In <u>Windsor Mount Joy</u>, the First Circuit expressly declined to conduct a <u>Wilburn Boat</u> inquiry into whether settled maritime law or State law should be applied because it found no violation even under the most stringent possible standard, reasoning that <u>uberrimae fidei</u> required only that vessel owner not "knowingly" permit the vessel to break ground in an unseaworthy condition.   57 F.3d at 54-55.

17

disclosed is objective, that is, "whether a reasonable person in the assured's position would know that the particular fact is material." _Knight_, 804 F.2d at 13 (citing _Btesh v. Royal Ins. Co._, 49 F.2d 720, 721 (2nd Cir. 1931)).  A material fact is "'something which would have controlled the underwriter's decision' to accept the risk." _Id._ (quoting _Btesh_ at 721).

Defendant's evidence shows that the crew details provided by Plaintiff were material to the risk insured.  In contrast to prior insurers, Defendant asked repeatedly for details about the crew, and issued only a temporary policy until the missing documentation was provided.  However, Defendant shows no evidence that the crew details provided by Plaintiff were inaccurate or incomplete. Plaintiff's undisputed testimony is that he and Ms. Huberfeld intended that she would stay aboard the ATTU during the entire insurance period.  Nor does Defendant show that Plaintiff failed to disclose or misrepresented any other relevant facts when he applied for insurance and responded to T.L. Dallas' requests for information.  Therefore, the Court concludes that there is no evidence that Plaintiff violated his duty under uberrimae fidae, and Defendant is not entitled to void the policy on that ground.

C.  New York Law

_Navegacion Goya_ squarely addresses the issue of an insured's obligation under New York State law to report changes in information provided at the time the insurance contract was agreed.  There, the defendant insurers attempted to deny coverage by claiming that the policy had been voided when the vessel's flag was changed from American to Panamanian during the period of coverage.  At the time

when the insured applied for coverage, the flag of the ship was represented as American.  411 F. Supp. at 933.  The defendants introduced uncontradicted expert testimony that flag is customarily a material consideration in the writing of marine insurance contracts.  Id.  The defendants argued that the change in flag breached a promissory representation made at the time the insurance was bound, or, in the alternative, that the change in flag was a material alteration of the risk insured and therefore discharged the policy.

Applying New York law to the promissory representation issue, the court in Navegacion Goya concluded,

> [W]hile the issue is not firmly settled, the more persuasive authority supports the view of the plaintiffs herein that under New York law a representation as to future conduct of the insured has no promissory character unless it is either specifically so described or is included in the policy itself.

Id. at 937.  It also held, "If an exclusion of liability is intended by the insurer which is not made apparent from the language used, it is the insurer's responsibility to make this fact clearly known."  Id. (citing Gov. Empl. Ins. Co. v. Ziarno, 273 F.2d 645 (2nd Cir. 1960).  With respect to the question of whether the insured had a continuing obligation to inform the insurer of material changes to the risk insured, the court similarly concluded that it did only if the insurer "notif[ies] the insured at the time coverage is granted of any changes which will result in a loss of coverage."  Id. at 936.

Defendant claims that Plaintiff's statement regarding the make-up of his crew was a promissory representation because Mr. Spink's understanding that this was the case can be imputed to Plaintiff.

1  Yet Mr. Spink does not state that he was actually notified by
2  Defendant or T.L. Dallas that changes in the crew would result in
3  loss of coverage.   Such an unstated "understanding" of an insurance
4  agent, mentioned nowhere in the policy itself and not communicated
5  to Plaintiff, does not fulfill the notice requirements of Navegacion
6  Goya.   Defendant did not notify Plaintiff at the time coverage was
7  granted that changes to his crew would result in a loss of coverage;
8  indeed, Defendant never notified Plaintiff of this condition at any
9  time.   The statement regarding single-handed navigation in the
10  application drafted by broker Blue Water, also not provided to
11  Plaintiff at the time coverage was granted, fails to put Plaintiff
12  on notice of that changes in crew could result in loss of coverage.
13  Therefore, the Court finds that, under New York law, Plaintiff's
14  disclosure of his crew was not a promissory representation and did
15  not establish a continuing obligation to notify Defendant of future
16  changes in the crew.

17  III.   Breach and Amount Owed

18        Plaintiff moves for summary adjudication that Defendant
19  breached the policy in question; that the amount owed is $163,000;
20  and that Plaintiff is entitled to prejudgment interest.   Defendant
21  relies solely on its defenses to oppose Plaintiff's motion for
22  summary adjudication, and does not otherwise dispute the issues of
23  breach, the amount owed or the right to prejudgment interest.
24  Accordingly, the Court grants Plaintiff's motion for summary
25  adjudication on those issues.

26

27

28
                                  20

1                              CONCLUSION

2          For the foregoing reasons, the Court DENIES Plaintiff's motion

3    for summary adjudication that Florida law applies to the contract

4    and otherwise GRANTS Plaintiff's motion for summary adjudication

5    (Docket No. 84).  Defendant's cross-motion for summary judgment is

6    DENIED (Docket No. 107).  Within two weeks of the date of this

7    order, Plaintiff shall submit his motion for attorneys' fees and his

8    calculation of prejudgment interest.  Defendant shall file its

9    opposition two weeks later and Plaintiff may reply a week after

10   that.  Judgment will enter thereafter.  Defendant shall bear

11   Plaintiff's costs of the action.

12

13         IT IS SO ORDERED.

14

15

16

17   Dated:  3/2/06

18                                    _____
                                      CLAUDIA WILKEN
19                                    United States District Judge

20

21

22

23

24

25

26

27

28
                                      21