IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD F. CHIARIELLO, | No. C 04-1076 CW |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES |
| v. | |
| ING GROEP NV, a Netherlands corporation, | |
| Defendant. | |

Following the Court's March 2, 2006 Order addressing the parties' cross-motions for summary judgment, Plaintiff Donald F. Chiarello moves for an award of attorneys' fees in his favor. Defendant opposes the motion, and the matter was taken under submission on the papers. Having considered all of the papers filed by the parties, the Court DENIES Plaintiff's motion for attorneys' fees and awards prejudgment interest at the rate specified in 28 U.S.C. § 1961(a), as described below.

BACKGROUND

This case involves a dispute over insurance coverage for Plaintiff's former boat, the ATTU, which sank off the South China Sea on October 12, 2003. Plaintiff obtained an insurance policy for the ATTU through Blue Water Insurance Company (hereinafter, Blue Water). Blue Water did business with T.L. Dallas (Special Risk) Ltd. (hereinafter, T.L. Dallas), a United Kingdom-based company that

acts as a managing agent for marine insurance companies.  T.L. Dallas is authorized to underwrite insurance and handle claims for insurance companies, including Defendant ING GROEP NV.  For a detailed account of Plaintiff's application for and receipt of a marine insurance contract with Defendant, see the Court's March 2, 2006 Order, pages 1-9.

The insurance policy at issue contains the following choice-of-law provision, which the Court has found applies to Plaintiff's claims, and which the parties now agree also applies to the application for attorneys' fees:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice, but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.

Following notification of the loss of the ATTU, T.L. Dallas hired the firm of Wager and Associates to investigate the circumstances of the loss.  Guy Matthews, a trained marine insurance adjuster, determined that Plaintiff's solo operation of the ATTU did not cause or contribute to the vessel's sinking, and that Plaintiff's operation of the ATTU did not breach the implied warranty of seaworthiness.  Mr. Matthews concluded that the ATTU was certainly a total loss, and recommended payment of Plaintiff's claim.  Ultimately, however, Mark Thomas, T.L. Dallas' claims manager, decided to deny Plaintiff's claim on the basis that Plaintiff's solo operation of the boat constituted a material non-disclosure in violation of the doctrine of uberrimae fidei.  In support of this decision, Mr. Thomas cited a case called La Reunion

1  Francaise, S.A. v. Haugen, No. 98-7129-Civ-Ferguson/Snow (S.D. Fla.
2  Jan. 20, 2000), in which the court decided that single-handed
3  sailing was a special condition affecting insurance coverage that
4  should have been disclosed pursuant to uberrimae fidei.
5       Plaintiff, a lawyer, originally filed his complaint in propria
6  persona on March 17, 2004, alleging one cause of action for recovery
7  of sums due under the maritime insurance policy.  Defendant answered
8  and brought counterclaims seeking a declaratory judgment voiding the
9  policy.  Defendant agreed to dismiss a prior action it had brought
10 against Plaintiff for declaratory judgment in the District of
11 Maryland.
12      In its March 2, 2006 Order, the Court found that the single-
13 handed navigation clause included in the Blue Water application was
14 not incorporated into the insurance contract between Plaintiff and
15 Defendant.  The Court concluded that there was no evidence that
16 Plaintiff violated his duty under uberrimae fidae or under New York
17 State law, and therefore that Defendant was not entitled to void the
18 policy on those grounds.  The Court found in Plaintiff's favor on
19 the otherwise undisputed issues of Defendant's breach of the policy
20 and the total amount owed ($163,000).
21                              DISCUSSION
22 I.  Entitlement to Attorneys' Fees
23      Plaintiff maintains that he is entitled to an award of
24 attorneys' fees because Defendant acted in bad faith in denying his
25 claim for coverage.  Defendant argues (1) that no well established,
26 entrenched principle or precedent of substantive United States
27 federal admiralty law allows courts to award attorneys' fees on a
28

1 finding of bad faith in a marine insurance dispute; and (2) that
2 Plaintiff is not entitled to attorneys' fees under New York State
3 law.  These issues are addressed in turn.
4        A.  Well-Established Federal Admiralty Law
5        The United States Supreme Court has held that a sick seaman may
6 recover attorneys' fees as part of his damages where his employer
7 wrongfully withheld maintenance and cure (i.e. support "designed to
8 provide a seaman with food and lodging when he becomes sick or
9 injured in the ship's service").  Vaughan v. Atkinson, 369 U.S. 527,
10 531-33 (1962); see also Madeja v. Olympic Packers, 310 F.3d 628 (9th
11 Cir. 2002) (affirming district court's finding of no bad faith but
12 noting that district court "clearly" has discretion to award
13 punitive attorneys' fees where shipowners frustrate seamen's
14 claims).  The Second Circuit has extended the recovery of attorneys'
15 fees in maritime cases by announcing a "general rule . . . that the
16 award of fees and expenses in admiralty actions is discretionary
17 with the district judge upon a finding of bad faith."  Ingersoll
18 Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 309 (2nd Cir. 1987),
19 cert. denied sub nom.  J.E. Bernard & Co. v. Ingersoll Milling Mach.
20 Co., 484 U.S. 1042 (1988).  The Second Circuit has since
21 characterized the Ingersoll rule as an established federal admiralty
22 rule that must be followed instead of State law.  Am. Nat'l Fire
23 Ins. Co. v. Kenealy, 72 F.3d 264, 270 (2nd Cir. 1995).  However, the
24 Eleventh Circuit has disagreed with this holding in Kenealy,
25 observing that "the cases which underlie the court's rationale in
26 Kenealy do not support the notion of an emerging federal rule of law
27 relating to attorney's fees in maritime insurance litigation."  All
28                                    4

1 <u>Underwriters v. Weisberg</u>, 222 F.3d 1309, 1314 (11th Cir. 2000)
2 (citing David W. Robertson, <u>Court-Awarded Attorneys' Fees in</u>
3 <u>Maritime Cases:  The 'American Rule' in Admiralty</u>, 27 J. Mar. L. &
4 Com. 507, 566 (1996)); <u>see also</u> <u>INA of Texas v. Richard</u>, 800 F.2d
5 1379, 1381 (5th Cir. 1986) (applying <u>Wilburn Boat Co. v. Fireman's</u>
6 <u>Fund Ins. Co.</u>, 348 U.S. 310 (1955), and holding that State law
7 controls determination of whether an award of attorneys' fees is
8 allowable in marine insurance controversies).
9     Defendants argue that, in light of this inter-circuit conflict,
10 the <u>Ingersoll</u> rule that a district court may award attorneys' fees
11 upon a finding of bad faith is not the type of well-settled federal
12 maritime law that replaces State law under <u>Wilburn Boat</u>.  Plaintiff
13 points to other decisions approving the award of attorneys' fees in
14 maritime disputes; however, none of those cases, apart from those in
15 the Second Circuit, apply <u>Vaughan</u> to allow attorneys' fee awards
16 based on underlying bad faith conduct regarding marine insurance
17 contracts.  <u>Cf., e.g.</u>, <u>Gradmann v. Holler GMBH v. Continental Lines,</u>
18 <u>S.A.</u>, 679 F.2d 272, 274 (1st Cir. 1982) (noting that district court
19 has inherent power in an admiralty suit to assess attorneys' fees
20 when a party to litigation has acted in bad faith, wantonly,
21 vexatiously or for oppressive reasons).  <u>Tibbs v. Great American</u>
22 <u>Insurance Co.</u>, 755 F.2d 1370 (9th Cir. 1985), is likewise inapposite
23 because it involved the application of California law, not federal
24 admiralty law.  Plaintiff criticizes <u>Richard</u> and <u>Weisberg</u> for
25 failing to acknowledge the Supreme Court's holding in <u>Vaughan</u> as
26 contrary precedent, but makes no effort to address the reasoning in
27 the Robertson article on which the Eleventh Circuit relied.
28

5

1  Robertson addresses Vaughan at length and concludes that the Second
2  Circuit erred in applying it to allow, as a matter well-established
3  federal maritime law, recovery of attorneys' fees based on
4  underlying bad faith conduct in the marine insurance context.
5  Robertson, 27 J. Mar. L. & Com. at 558-59, 562-566.  Nor does
6  Plaintiff address the distinction, highlighted by Robertson, between
7  an attorneys' fee award based on a party's bad faith conduct during
8  litigation versus a fee award based on a party's bad faith conduct
9  during the underlying transaction.  The Court therefore finds that
10 Plaintiff has failed to identify a well established, entrenched
11 principle or precedent of substantive United States federal
12 admiralty law that would allow him to recover attorneys' fees based
13 on Defendants' underlying conduct in this marine insurance dispute.
14      Nor has Plaintiff shown, as a matter of well-established
15 federal admiralty law, that he may recover attorneys' fees from
16 Defendant based on a breach of the admiralty principle of uberrimae
17 fidae.[1]  As the Court noted in its prior order, the Supreme Court's
18 decision in Wilburn Boat has generally been interpreted "in
19 deference to state hegemony over insurance, to discourage the
20 fashioning of new federal law and to favor the application of state
21 law."  Albany Ins. Co. v. Wisniewski, 579 F. Supp. 1004, 1013-14 (D.
22 R.I. 1984) (listing cases).  The cases on which Plaintiff relies for
23 the proposition that Defendant had an obligation to notify him at
24 the time coverage was granted of any changes that would result in a
25 loss of coverage do not involve well-established federal law.  See

---

[1] For a brief overview of the doctrine of uberrimae fidae, see the Court's March 2, 2006 Order, pages 15-16.

1  Navegacion Goya, S.A., v. Mut. Boiler & Mach. Ins. Co., 411 F. Supp.
2  929, 936 (S.D. N.Y. 1975) (noting insurer must notify the insured at
3  the time coverage is granted of any changes which will result in
4  loss of coverage); Yonkers Contracting Co., Inc., v. Gen. Star Nat.
5  Ins. Co., 14 F. Supp. 2d 365, 373 (S.D. N.Y. 1998) (denying New York
6  State law claim against insurer for breach of contractual duty of
7  good faith based on allegations of failure to negotiate).
8       Because there is no well-established federal law governing the
9  recovery of attorneys' fees in connection with a marine insurance
10 dispute, the terms of the policy require the Court to apply New York
11 State law to Plaintiff's fee motion.
12      B.   New York State Law
13      Under New York law, the general rule is that a prevailing party
14 cannot recover the costs of litigation. Employers Mut. Cas. Co. v.
15 Key Pharm., 75 F.3d 815, 824 (2nd Cir. 1996). An exception to this
16 prohibition against recovery of attorneys' fees arises when a
17 policyholder "has been cast in a defensive posture by the legal
18 steps an insurer takes in an effort to free itself from its policy
19 obligations." Mighty Midgets, Inc., v. Centennial Ins. Co., 47 N.Y.
20 2d 12, 21 (1979). However, New York courts have clarified that this
21 exception is also based on the insurer's "duty to defend" the
22 insured against lawsuits. Aetna Cas. & Sur. Co. v. Dawson, 44
23 N.Y.S. 2d 10, 12 (N.Y. App. Div. 1981), aff'd, N.Y. 2d 1022 (1982).
24 Therefore, the Mighty Midgets exception arises only "when a
25 policyholder has been cast in a defensive posture by its insurer in
26 a dispute over the insurer's duty to defend." Key Pharm., 75 F.3d
27 at 824 (citing Dawson, 44 N.Y.S. 2d at 12).
28

7

1   According to New York law, even assuming that Plaintiff has
2 been put in a defensive posture in this litigation based on
3 Defendant's filing suit in Maryland for declaratory relief or
4 Defendant's counterclaims in this lawsuit, he still cannot recover
5 attorneys' fees.  This is because the disputed insurance contract
6 here does not involve a duty to defend.  In his reply, Plaintiff
7 identifies no other New York authority that could support an award
8 of attorneys' fees to a prevailing party in a dispute such as this.
9 Therefore, the Court denies Plaintiff's motion for attorneys' fees.
10   Moreover, even if Plaintiff had identified applicable authority
11 allowing him to recover attorneys' fees upon a showing of
12 Defendant's bad faith, the Court would not award attorneys' fees.
13 Plaintiff's theory of bad faith states that Defendant relied on a
14 strained or contrived reading of the policy in order to avoid its
15 obligation to pay, ignoring the recommendation of its own hired
16 investigator, Mr. Matthews.  Even though the Court ultimately
17 rejected Defendant's theory that Plaintiff had violated the duty of
18 <u>uberrimae fidae</u>, reasonable minds could differ on this legal
19 question.  Although the unpublished decision in <u>La Reunion
20 Francaise</u> is not binding and, in the Court's view, is
21 distinguishable on the facts, it did provide direct support for
22 Defendant's position.  Mr. Matthews' recommendations were based on
23 his findings regarding the incident itself, e.g. that Plaintiff's
24 conduct was not responsible for the sinking of the ATTU, a fact
25 which was neither disputed nor relevant to Defendant's rationale for
26 denying coverage.  <u>See</u> Oksenendler Reply Decl., Ex. 4, June 11, 2003
27 Email from Mark Thomas to Thierry Serck ("The view of Wager &
28

Associates may well be cogent on any issue of seaworthiness but it will not affect any argument under uberrimae fidae (the duty of the utmost good faith).") In the circumstances of this case, the fact that Defendant wrongfully denied coverage is not tantamount to bad faith.

For these reasons, the Court denies Plaintiff's motion for attorneys' fees.

## II. Pre-judgment Interest

In its March 2, 2006 order, the Court found that Plaintiff is entitled to pre-judgment interest. The parties dispute the appropriate rate.

The Ninth Circuit has held that in suits involving maritime issues, federal law applies to the determination of pre-judgment interest rates. Columbia Brick Works, Inc., v. Royal Ins. Co. of Am., 768 F.2d 1066, 1070 (9th Cir. 1985). The interest rate prescribed for post-judgment interest in 28 U.S.C. § 1961(a)[2] is "appropriate for fixing the rate of prejudgment interest unless the equities of a particular case demand a different rate." Id. at 1071 (citing W. Pacific Fisheries, Inc., v. SS President Grant, 730 F.2d 1280, 1289 (9th Cir. 1984)). If the equities so demand, the district court may choose to award the local rate of interest. Id. The California statutory rate for prejudgment interest chargeable after a breach of contract is ten percent per annum. Cal. Civ. Code

---

[2] 28 U.S.C. § 1961(a) provides for interest to be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

1  § 3289(b).

2      Plaintiff has not shown any reason why the equities in this
3  particular case favor application of the California statutory rate
4  rather than the federal rate, especially in light of the dispute's
5  lack of connection to California.  Therefore, pursuant to <u>Columbia
6  Brick</u>, the Court awards interest as provided in 28 U.S.C.
7  § 1961(a).[3]

8                               CONCLUSION

9      For the foregoing reasons, the Court DENIES Plaintiff's motion
10 for attorneys' fees (Docket No 123).  The Court awards Plaintiff
11 prejudgment interest as provided in 28 U.S.C. § 1961(a).  Defendant
12 shall bear Plaintiff's costs of the action.  The Clerk shall enter
13 judgment accordingly.

14

15     IT IS SO ORDERED.

16

17 Dated:  7/10/06                       *Claudia Wilken*
18                                            CLAUDIA WILKEN
                                           United States District Judge

---

[3] This amount is to be calculated according to the following: Interest = Principal*Rate*Time, and compounded annually.

10